UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| Segundo Pablo Loja Chogllo,<br><br>                   Petitioner,<br><br>v.<br><br>Todd LYONS, in his capacity as Acting Director, Immigration and Customs Enforcement; Kristi NOEM, Secretary, U.S. Department of Homeland Security; Pamela BONDI, U.S. Attorney General; Daren K. MARGOLIN, Executive Office for Immigration Review; David EASTERWOOD, Field Office Director of St. Paul Field Office for U.S. Department of Homeland Security, United States Immigration and Customs Enforcement, Enforcement and Removal Operations<br><br>                   Respondents. | Case No.<br><br>**PETITION FOR WRIT OF HABEAS CORPUS UNDER 28 U.S.C. § 2241.** |

**PETITION FOR WRIT OF HABEAS CORPUS AND
REQUEST FOR ORDER TO SHOW CAUSE UNDER § 2243**

# INTRODUCTION

1. Petitioner Segundo Pablo Loja Chogllo (A#215-980-900) is in the physical custody of Respondents at the McCook Detention Center in in McCook, Nebraska. Mr. Loja Chogllo was arrested by immigration officials on December 12, 2025 near Fort Snelling, Minnesota. He now faces unlawful detention because he's been detained by Immigration and Customs Enforcement, and the Department of Homeland Security (DHS) and the Executive Office of Immigration Review (EOIR) have now wrongfully concluded that Petitioner is subject to mandatory detention.

2. Mr. Loja Chogllo entered the United States in 2016 without inspection. He was the victim of a serious crime in the United States and applied for a U-Visa based on being the victim of this crime in August of 2018. Ex. B. He received a bona fide determination on his U-Visa and was granted deferred action for a period of four year by USCIS on September 7, 2023. *Id.* On December 12, 2025, Mr. Loja Chogllo was detained by immigration officials due to Operation Metro Surge and was promptly moved out of state. His being detained in Nebraska instead of his home state of Minnesota has the practical effect of limiting his access to representation and his family who are all located in Minnesota.

3. On January 22, 2026, the Immigration Judge terminated the Petitioner's immigration court proceedings because he was granted deferred action by USCIS through his application for a U-Visa. Ex. A. Since there are no pending removal proceedings against Mr. Loja Chogllo, the Respondents do not have a valid basis for his detention. However, since the termination of his immigration court case, the Respondents have refused to provide a plan for his release. The Respondents have communicated that they plan to appeal the termination of his court case. The Petitioner does not dispute that the Respondents have a right to appeal

the immigration judge's decision to terminate his immigration court case. However, the possibility of an appeal of this decision does not give the Respondents a lawful basis to keep the Petitioner in detention. Thus, the Petitioner is being unlawfully detained by the Respondents. The Petitioner's removal proceedings were properly terminated pursuant to 8 C.F.R. s 1003.18(d)(ii)(1)(ii) because the Petitioner received deferred action from USCIS based on his viable U-Visa application.

4. In this case, the Respondents arrested the Petitioner near Fort Snelling, Minnesota, placed him into removal proceedings under INA § 240 and served him with a Notice to Appear stating that he was inadmissible under INA § 212(a)(6)(A)(i) and INA § 212(a)(7)(A)(i)(I). However, the immigration judge terminated proceedings without determining that Mr. Loja Chogllo was inadmissible to the United States as alleged by the Respondents. Respondents claim that the termination of immigration court proceedings have no bearing on their detention authority. This is an incorrect reading of the detention statute.

5. Respondent was detained under 8 U.S.C. § 1226(a). The purpose of this statute is to allow the Respondents to detain an individual "pending a decision on whether the alien is to be removed from the United States." The decision to remove the Petitioner from the United States can only be made by an immigration judge pursuant to 8 U.S.C. § 1229(a)(1). The immigration judge's decision to terminate the Petitioner's immigration court proceedings ended the Respondents' right to detain the Petitioner under 8 U.S.C. § 1226(a). Section 1229a governs removal proceedings, and it authorizes immigration judges presiding over them to decide whether an alien is inadmissible or deportable. 8 U.S.C. § 1229a(a)(1). "While removal proceedings are in progress, most aliens may be released on bond or paroled." *Zadvydas*, 533 U.S. at 683 (citing 8 U.S.C. § 1226(a)(2), (c) (1994 ed., Supp.

V)). Detention during the pendency of removal proceedings may also be mandatory in certain circumstances that are not applicable to Petitioner, such as when the person has been convicted of serious crimes. *See* 8 U.S.C. § 1226(c). By terminating removal proceedings against the Petitioner, the immigration judge made the decision not to determine the inadmissibility of the Petitioner and not to order his removal. Thus, the Petitioner is being unlawfully held by the Respondents in legal limbo, where he is unable to be granted a bond because the Respondents will claim that he is mandatorily detained under 8 U.S.C. 1225(a) and he is unable to receive a decision from the immigration court because his proceedings have been terminated. It seems that Respondents' plan is to keep the Petitioner in immigration detention indefinitely or until the determination of the appeal of the decision of the immigration judge. The appeal decision is likely to take up to six months or more. Further, as of the date of the petition, no appeal has been filed by the Respondents. The Petitioner is being unlawfully detained by the Respondents and respectfully requests immediate release.

6. Based on the allegations continued in the Petitioner's Notice to Appear, Respondents will likely conclude, per their recent decisions, that they do not have jurisdiction over Petitioner's bond hearing. On July 8, 2025, DHS, in collaboration with the Executive Office for Immigration Review (Immigration Courts) issued a new policy instructing all Immigration and Customs Enforcement (ICE) employees to consider anyone inadmissible under § 1182(a)(6)(A)(i)—i.e., those who entered the United States without inspection—to be an "applicant for admission" under 8 U.S.C. § 1225(b)(2)(A) and therefore subject to mandatory detention.

7. On September 5, 2025, the Board of Immigration Appeals turned this new policy into

precedent by issuing a decision that said it did "not have the authority" to hear any bond case for someone who had entered the United States without inspection. *Matter of Yajure Hurtado*, 29 I&N Dec. 216 (BIA 2025).

8. Because of this new policy and the new BIA decision, Mr. Loja Chogllo's request for a bond before the Immigration Court will likely be denied and therefore a request would be futile. The Immigration Judge would likely deny Mr. Loja Chogllo's bond request because it would find that it has no jurisdiction to hear the case. *Matter of Yajure Hurtado*.

9. The Respondents would therefore conclude that notwithstanding Petitioner's long residency in the United States, he is nevertheless an "applicant for admission" who is "seeking admission" and subject to mandatory detention under § 1225(b)(2)(A).

10. Petitioner's detention on this basis violates the plain language of the Immigration and Nationality Act. Section 1225(b)(2)(A) does not apply to individuals like Petitioner who previously entered and are now residing in the United States. Instead, such individuals are subject to a different statute, § 1226(a), that allows for release on conditional parole or bond. That statute expressly applies to people who, like Petitioner, are charged as inadmissible for having entered the United States without inspection.

11. Respondents' new legal interpretation is plainly contrary to the statutory framework and contrary to decades of agency practice applying § 1226(a) to people like Petitioner.

12. Accordingly, Petitioner seeks a writ of habeas corpus requiring his **immediate release** from custody or, in the alternative that he be provided a bond hearing under § 1226(a) within seven days in the district of Minnesota in which DHS bears the burden of establishing the necessity of petitioner's continued detention and considers alternatives to detention that could mitigate flight risk.

PETITION FOR WRIT OF HABEAS CORPUS -

## JURISDICTION

1. Petitioner is in the physical custody of Respondents. Petitioner is detained at the McCook Detention Facility in McCook, Nebraska.

2. This Court has jurisdiction over Petitioner's habeas corpus petition because Petitioner was apprehended within the District of Minnesota by federal officers and immediately placed into federal custody. The habeas petition challenges the legality of that seizure and detention. The habeas jurisdiction attached at the time of Petitioner's apprehension in this District, and the jurisdiction is not defeated by any subsequent decision by Respondents to transfer Petitioner to another state. (*See,* Order to Show Cause in Case No. 26-CV-0660, *See also*, Order to Show Cause in Case No. 26-CV-780, and 26-CV-0707, each issued by this Court in the last few days in response to the current immigration enforcement surge in Minnesota and the movement of many Minnesota detainees out of Minnesota.)

3. The Petitioner has substantial contacts in the District of Minnesota, and does not have contacts in the state of Nebraska. Petitioner's family, support system, and attorney are in Minnesota. The Petitioner resided in Minnesota for years prior to his apprehension by ICE.

4. This Court has jurisdiction under 28 U.S.C. § 2241(c)(5) (habeas corpus), 28 U.S.C. § 1331 (federal question), and Article I, section 9, clause 2 of the United States Constitution (the Suspension Clause).

5. This Court may grant relief pursuant to 28 U.S.C. § 2241, the Declaratory Judgment Act, 28 U.S.C. § 2201 et seq., and the All Writs Act, 28 U.S.C. § 1651.

## VENUE

1. Pursuant to 28 U.S.C. § 2241, 28, U.S.C § 1331, and Article I, § 9, cl.2 of the United States Constitution; the All Writs Act, 28 U.S.C. § 1651; the Administrative Procedure Act, 5

U.S.C. § 701; and the Declaratory Judgement Act, 28 U.S.C. § 2201, jurisdiction lies in the United States District Court for the District of Minnesota, the judicial district in which Petitioner currently is detained.

2. Venue is also properly in this Court pursuant to 28 U.S.C. § 1391(e) because Respondents are employees, officers, and agencies of the United States, and because a substantial part of the events or omissions giving rise to the claims occurred in the District of Minnesota.

## REQUIREMENTS OF 28 U.S.C. § 2243

1. The Court must grant the petition for writ of habeas corpus or order Respondents to show cause "forthwith," unless the petitioner is not entitled to relief. 28 U.S.C. § 2243. If an order to show cause is issued, the Respondents must file a return "within three days unless for good cause additional time, not exceeding twenty days, is allowed." *Id.*

2. Habeas corpus is "perhaps the most important writ known to the constitutional law . . . affording as it does a *swift* and imperative remedy in all cases of illegal restraint or confinement." *Fay v. Noia*, 372 U.S. 391, 400 (1963) (emphasis added). "The application for the writ usurps the attention and displaces the calendar of the judge or justice who entertains it and receives prompt action from him within the four corners of the application." *Yong v. I.N.S.*, 208 F.3d 1116, 1120 (9th Cir. 2000) (citation omitted).

## PARTIES

1. Petitioner, Segundo Pablo Loja Chogllo, is a citizen of Ecuador who has been in immigration detention since December 12, 2025. He is detained at the McCook Detention Center in McCook, Nebraska.

2. Respondent Todd Lyons is the Acting Director of U.S. Immigration and Customs Enforcement. As such, Acting Director Todd Lyons is Petitioner's immediate custodian
PETITION FOR WRIT OF HABEAS CORPUS -

and is responsible for Petitioner's detention and removal. He is named in his official capacity.

3. Respondent Kristi Noem is the Secretary of the Department of Homeland Security. She is responsible for the implementation and enforcement of the Immigration and Nationality Act (INA), and oversees ICE, which is responsible for Petitioner's detention. Ms. Noem has ultimate custodial authority over Petitioner and is sued in her official capacity.

4. Respondent Pamela Bondi is the Attorney General of the United States. She is responsible for the Department of Justice, of which the Executive Office for Immigration Review and the immigration court system it operates is a component agency. She is sued in her official capacity.

5. Respondent Daren K. Margolin is the director of the Executive Office for Immigration Review (EOIR) the federal agency responsible for implementing and enforcing the INA in removal proceedings, including for custody redeterminations in bond hearings. He is sued in his professional capacity.

6. Respondent David Easterwood, Field Office Director of St. Paul Field Office for U.S. Department of Homeland Security, United States Immigration and Customs Enforcement, Enforcement and Removal Operations, and oversees the Fort Snelling Detention Facility where the Petitioner is located. He has immediate physical custody of Petitioner. He is sued in his official capacity.

## LEGAL FRAMEWORK

1. The INA prescribes three basic forms of detention for the vast majority of noncitizens in

removal proceedings.

2. First, 8 U.S.C. § 1226 authorizes the detention of noncitizens in standard removal proceedings before an IJ. See 8 U.S.C. § 1229a. Individuals in § 1226(a) detention are generally entitled to a bond hearing at the outset of their detention, *see* 8 C.F.R. §§ 1003.19(a), 1236.1(d), while noncitizens who have been arrested, charged with, or convicted of certain crimes are subject to mandatory detention, *see* 8 U.S.C. § 1226(c).

3. Second, the INA provides for mandatory detention of noncitizens subject to expedited removal under 8 U.S.C. § 1225(b)(1) and for other recent arrivals seeking admission referred to under § 1225(b)(2).

4. Last, the INA also provides for detention of noncitizens who have been ordered removed, including individuals in withholding-only proceedings, *see* 8 U.S.C. § 1231(a)–(b).

5. This case concerns the detention provisions at §§ 1226(a) and 1225(b)(2).

6. The detention provisions at § 1226(a) and § 1225(b)(2) were enacted as part of the Illegal Immigration Reform and Immigrant Responsibility Act (IIRIRA) of 1996, Pub. L. No. 104-–208, Div. C, §§ 302–03, 110 Stat. 3009-546, 3009–582 to 3009–583, 3009–585. Section 1226(a) was most recently amended earlier this year by the Laken Riley Act, Pub. L. No.119-1, 139 Stat. 3 (2025).

7. Following the enactment of the IIRIRA, EOIR drafted new regulations explaining that, in general, people who entered the country without inspection were not considered detained under § 1225 and that they were instead detained under § 1226(a). See Inspection and Expedited Removal of Aliens; Detention and Removal of Aliens; Conduct of Removal Proceedings; Asylum Procedures, 62 Fed. Reg. 10312, 10323 (Mar. 6, 1997).

8. Thus, in the decades that followed, most people who entered without inspection and were

placed in standard removal proceedings received bond hearings, unless their criminal history rendered them ineligible. That practice was consistent with many more decades of prior practice, in which noncitizens who were not deemed "arriving" were entitled to a custody hearing before an IJ or other hearing officer. *See* 8 U.S.C. § 1252(a) (1994); *see also* H.R. Rep. No. 104-469, pt. 1, at 229 (1996) (noting that § 1226(a) simply "restates" the detention authority previously found at § 1252(a)).

9. On July 8, 2025, ICE, "in coordination with" DOJ, announced a new policy that rejected well-established understanding of the statutory framework and reversed decades of practice.

10. The new policy, entitled "Interim Guidance Regarding Detention Authority for Applicants for Admission,"[1] claims that all persons who entered the United States without inspection shall now be deemed "applicants for admission" under 8 U.S.C. § 1225, and therefore are subject to mandatory detention provision under § 1225(b)(2)(A). The policy applies regardless of when a person is apprehended, and affects those who have resided in the United States for months, years, and even decades.

11. On September 5, 2025, the BIA published a decision that adopts this same position and binds it on all Immigration Courts. *Matter of Yajure Hurtado*, 29 I&N Dec. 216 (BIA 2025). In *Matter of Yajure-Hurado*, the BIA explicitly held that "Immigration Judges lack authority to hear bond requests or to grant bond to aliens who are present in the United States without admission." *Id*. In complete contradiction of decades of judicial precedent, the Board stripped Immigration Judges of jurisdiction over bond for anyone who has entered the United States without inspection.

---

[1] *Available at* https://www.aila.org/library/ice-memo-interim-guidance-regarding-detention-authority-for-applications-for-admission.

PETITION FOR WRIT OF HABEAS CORPUS -

12. ICE and EOIR have adopted this position even though federal courts have rejected this exact conclusion. For example, after IJs in the Tacoma, Washington, immigration court stopped providing bond hearings for persons who entered the United States without inspection and who have since resided here, the U.S. District Court in the Western District of Washington found that such a reading of the INA is likely unlawful and that § 1226(a), not § 1225(b), applies to noncitizens who are not apprehended upon arrival to the United States. *Rodriguez Vazquez v. Bostock*, --- F. Supp. 3d --- 2025 WL 1193850 (W.D. Wash. Apr. 24, 2025); *see also Gomes v. Hyde*, No. 1:25-CV-11571-JEK, 2025 WL 1869299, at *8 (D. Mass. July 7, 2025) (granting habeas petition based on same conclusion).

13. Since then, federal courts throughout the United States have agreed with the Western District of Washington and granted preliminary injunctive relief for petitioners who entered the United States without inspections years ago. *Lopez Santos v. Noem et al*, 3:25-cv-01193-TAD-KDM (W.D. La. Sept. 11, 2025); *Hernandez Marcelo v. Trump*, 3:25-cv-00094, (S.D. Iowa September 10, 2025); *Jose J.O.E. v. Bondi*, et al, 25-cv-3051 (D. Minn August 27, 2025); *Mayo Anicasio v Kramer et. al.*, 4:25-cv-3158, (D. Neb. August 14, 2025). As almost every district court that has taken up this issue has concluded, including courts in this district, "the statutory text, the statute's history, Congressional intent, and § 1226(a)'s application for the past three decades" clearly support the finding that §1226 is the applicable statute, not §1225. *See Buenrostro-Mendez v. Bondi*, 2025 WL 2886346, at *3 (S.D. Tex. Oct. 7, 2025) (quoting *Pizarro Reyes v. Raycraft*, 2025 WL 2609425, at *4 (E.D. Mich. Sept. 9, 2025) and citing *Lopez-Arevelo v. Ripa*, 2025 WL 2691828, at *7 (W.D. Tex. Sept. 22, 2025)); *Rodriguez*, 2025 WL 2782499, at *1 & n.3 (collecting cases); *Belsai D.S. v. Bondi*, 2025 WL 2802947, at *6 (D. Minn. Oct. 1, 2025)). "In recent weeks,

courts across the country have held that this new, expansive interpretation of mandatory detention under the INA is either incorrect or likely incorrect." *Lopez-Arevelo*, 2025 WL 2691828, at *7.

14. DHS's and DOJ's interpretation defies the INA. As the *Rodriguez Vazquez* court explained, the plain text of the statutory provisions demonstrates that § 1226(a), not § 1225(b), applies to people like Petitioner.

15. Section 1226(a) applies by default to all persons "pending a decision on whether the [noncitizen] is to be removed from the United States." These removal hearings are held under § 1229a, to "decid[e] the inadmissibility or deportability of [a] [noncitizen]."

16. The text of § 1226 also explicitly applies to people charged as being inadmissible, including those who entered without inspection. *See* 8 U.S.C. § 1226(c)(1)(E). Subparagraph (E)'s reference to such people makes clear that, by default, such people are afforded a bond hearing under subsection (a). As the *Rodriguez Vazquez* court explained, "[w]hen Congress creates "specific exceptions" to a statute's applicability, it "proves" that absent those exceptions, the statute generally applies. *Rodriguez Vazquez*, 2025 WL 1193850, at *12 (citing *Shady Grove Orthopedic Assocs., P.A. v. Allstate Ins. Co.*, 559 U.S. 393, 400 (2010)).

17. Section 1226 therefore leaves no doubt that it applies to people who face charges of being inadmissible to the United States, including those who are present without admission or parole.

18. By contrast, § 1225(b) applies to people arriving at U.S. ports of entry or who recently entered the United States. The statute's entire framework is premised on inspections at the border of people who are "seeking admission" to the United States. 8 U.S.C. §

1225(b)(2)(A). Indeed, the Supreme Court has explained that this mandatory detention scheme applies "at the Nation's borders and ports of entry, where the Government must determine whether a[] [noncitizen] seeking to enter the country is admissible." *Jennings v. Rodriguez*, 583 U.S. 281, 287 (2018).

19. This District has held that once DHS releases a noncitizen from immigration detention pursuant to 8 U.S.C. § 1226(a) and places them into removal proceedings, § 1226(a) governs their detention for the remainder of their proceedings. See *Maldonado v. Olson*, 795 F. Supp. 3d 1134, 1142–48, 1150–52 (D. Minn. 2025); *Jose J.O.E. v. Bondi*, 797 F. Supp. 3d 957, 968–970 (D. Minn. 2025); *Mayamu K. v. Bondi*, Civ. No. 25-3035 (JWB/LIB), 2025 WL 3641819, at *7–8 (D. Minn. Oct. 20, 2025). Further, this District has held that when a DHS checks the box, "You are an alien present in the United States who has not been admitted or paroled" and chooses not to check the box, "You are an arriving alien" on a noncitizen's Notice to Appear, that serves as evidence that their detention falls under § 1226. *Id.*

20. Accordingly, the mandatory detention provision of § 1225(b)(2) does not apply to people like Petitioner, who have already entered and were residing in the United States at the time they were apprehended.

21. Petitioner is a member of the *Maldonado* class and thus not subject to mandatory detention. In *Maldonado Bautista v. Santacruz*, the federal court held that class members, like the Petitioner, are eligible for release on bond and are not subject to mandatory detention. *Maldonado Bautista v. Santacruz*, 5:25-cv-01873 (C.D. Cal. Dec. 18, 2025 (ECF No. 92). The Maldonado class, certified by the federal court, includes: "All noncitizens of the United States without lawful status who (1) have entered or will enter the United States

without inspection; (2) were not or will not be apprehended upon arrival; and (3) are not or will not be subject to detention under INA § 236(c) or § 241 at the time the Department of Homeland Security makes an initial custody determination." *Id.*

22. In the same order certifying the *Maldonado* class, the federal court held that the declaratory relief granted to the Petitioners extended to all members of the *Maldonado* class as a whole. *Id.* On December 18, 2025, the federal court issued a final judgment holding that *Matter of Yajure Hurtado* does not apply to class members. *Id.* See also, *Matter of Yajure Hurtado*, 29 I&N Dec. 216 (BIA 2025). As the Petitioner is a *Maldonado* class member, he is not subject to mandatory detention.

## FACTS

1. Petitioner lives with his wife and U.S. Citizen child in Minneapolis, Minnesota. The Petitioner entered the United States in 2016 and has been living in Minnesota since his entry.

2. Pursuant to his arrest by Immigration Officials, Mr. Loja Chogllo was placed into removal proceedings pursuant to 8 U.S.C. § 1229a. The Department of Homeland Security then charged Petitioner with, *inter alia*, being inadmissible under 8 U.S.C. § 1182(a)(6)(A)(i) as someone who entered the United States without inspection. Ex. C. Mr. Loja Chogllo's immigration court proceedings were terminated by the immigration judge on January 22, 2026. Ex. A.

3. In his many years of residing in the United States, Mr. Loja Chogllo has never had contact with Immigration Officials prior to his arrest on December 12, 2025. He has no criminal history except for minor traffic violations.

4. On September 7, 2023 Mr. Loja Chogllo received a bona fide determination for his U Visa

PETITION FOR WRIT OF HABEAS CORPUS -

application. Ex. B. This determination grants Mr. Loja Chogllo deferred action for a period of four years. *Id*. Deferred action is "a form of prosecutorial discretion to defer removal action (deportation) against an alien for a certain period of time. Aliens granted deferred action are considered to be in a period of stay authorized under USCIS policy for the period deferred action is in effect."[2] Ex. B. Thus, as Petitioner was granted deferred action, his removal has been deferred and his enforcement priority has been lowered. *Id*. As such, Petitioner has a status granted to him by USCIS based on his U-Visa Application, and as such, he should never have been detained by Respondents.

5. Mr. Loja Chogllo has a wife and a U.S. Citizen child who is less than one-year-old in Minneapolis, Minnesota. His family depends on him for financial and emotional support. However, because of Respondents' policy, Petitioner was detained despite Mr. Loja Chogllo having deferred action and he remained in detention despite his immigration court case being terminated. Ex. A.

6. Without relief from this court, Mr. Loja Chogllo faces the prospect of months, or even years, in immigration custody, separated from his family and community, even though there have been no material changes in Mr. Loja Chogllo's circumstances or court proceedings that would justify his detention.

**REMEDIES**

1. Petitioner moves for this Court to order the Respondents to **immediately release** the Petitioner. In the alternative, Petitioner moves for the court to order the Respondents to provide Petitioner with constitutionally adequate bond hearing. He also moves for this Court to enjoin Respondents from invoking the auto-stay provisions during any pending

---

[2] USCIS Policy Manual, Chapter 2 - Emergencies or Unforeseen Circumstances-Related Flexibilities | USCIS,

PETITION FOR WRIT OF HABEAS CORPUS -

bond appeal, should the Immigration Judge issue a bond to him. The auto-stay provisions have been found by other courts to be *ultra vires* because they authorize DHS to arbitrarily deny him his right to liberty.

2. 8 C.F.R. § 1003.19(i)(2) gives DHS unilateral authority to block an Immigration Judge's custody order through the auto-stay provision. Under that "automatic stay" regulation, if DHS disagrees with an Immigration Judge's custody determination, DHS can file a boilerplate notice of intent to appeal that automatically stays the Immigration Judge's order. In other words, the prosecuting officials who failed to keep the non-citizen detained in the first place can unilaterally block the Immigration Judge's order and force continued detention.

3. While the regulations provide that DHS's automatic stay will lapse in 90 days absent a BIA decision on the appeal, there are multiple avenues for extension. 8 C.F.R. § 100.36(c)(4). For example, if the BIA does not issue a decision in the 90-day window, DHS can then seek an additional discretionary stay from the BIA. 8 C.F.R. § 1003.6(c)(5). The automatic stay remains in effect for another 30 days while the BIA decides whether to grant a discretionary stay. *Id.*

4. Even if the BIA rules in favor of the non-citizen on appeal and authorizes his release on bond, that release is automatically stayed for five more business days to give DHS a chance to refer the case to the Attorney General. 8 C.F.R. § 1003.6(d). Then, if DHS refers the case to the Attorney General, the automatic stay is extended for another 15 days. *Id.* The Attorney General may then stay release for the pendency of the case. *Id.* There is no prescribed time limit for final resolution of the custody determination, meaning an individual may remain in detention indefinitely. In sum, should DHS invoke the auto-stay

PETITION FOR WRIT OF HABEAS CORPUS -

provisions, Petitioner will have no way of knowing how long this automatic stay will last and has no opportunity to challenge the stay. In practice, the automatic stay regulation renders any Immigration Judge's custody decisions ineffectual: If DHS disagrees with a custody decision, it can keep Petitioner detained for a minimum of 90 days, without a truly discernable end point.

5. This auto-stay provision has been deemed *ultra vires* and a violation of the APA by several courts. *See*, e.g., *Leal-Hernandez v. Noem*, No. 1:25-CV-02428-JRR, 2025 WL 2430025 (D. Md. Aug. 24, 2025)(finding the government's use of automatic stay provision to appeal IJ's bond decision ultra vires because it "renders both the discretionary nature of Petitioner's detention and the IJ's authority a nullity"); *Carmona-Lorenzo v. Trump*, No. 4:25CV3172, 2025 WL 2531521, at *5 (D. Neb. Sep. 3, 2025) (holding that the automatic stay provision is ultra vires because it "exceeds the statutory authority Congress gave to the Attorney General"); *Zavala v. Ridge*, 310 F. Supp. 2d. 1071, 1079 (N.D. Cal. 2004) (finding the automatic stay regulation ultra vires because it "effectively eliminates the discretionary nature of the immigration judge's determination and results in a mandatory detention . . . of a new class of aliens, although Congress has specified that such individuals are not subject to mandatory detention"); *see also Anicasio v. Kramer*, No. 25-cv-3158, 2025 WL 2374224 (D. Neb. Aug. 14, 2025).

6. The automatic stay regulation violates the Administrative Procedure Act (APA) and is *ultra vires* because it is "in excess of statutory jurisdiction, authority, or limitations, or short of statutory right." 5 U.S.C. § 706(2)(C), and Petitioner moves for this Court to enjoin Respondents from invoking it at or after any future bond hearing ordered by this Court.

## CLAIMS FOR RELIEF

## COUNT I

### Violation of the INA

1. Petitioner incorporates by reference the allegations of fact set forth in the preceding paragraphs.

2. The mandatory detention provision at 8 U.S.C. § 1225(b)(2) does not apply to all noncitizens residing in the United States who are subject to the grounds of inadmissibility. As relevant here, it does not apply to those who previously entered the country and have been residing in the United States prior to being apprehended and placed in removal proceedings by Respondents. Such noncitizens are detained under § 1226(a), unless they are subject to § 1225(b)(1), § 1226(c), or § 1231.

3. The application of § 1225(b)(2) to Petitioner unlawfully mandates his continued detention and violates the INA.

## COUNT II

### Violation of Due Process

1. Petitioner repeats, re-alleges, and incorporates by reference each and every allegation in the preceding paragraphs as if fully set forth herein.

2. The government may not deprive a person of life, liberty, or property without due process of law. U.S. Const. amend. V. "Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty that the Clause protects." *Zadvydas v. Davis*, 533 U.S. 678, 690, 121 S.Ct. 2491, 150 L.Ed.2d 653 (2001).

3. Petitioner has a fundamental interest in liberty and being free from official restraint.

4. The government's detention of Petitioner without a bond redetermination hearing to determine whether he is a flight risk or danger to others violates his right to due process.

5. Any use of the auto-stay provision found at 8 C.F.R. § 1003.19(i)(2) is *ultra vires* and a violation of his rights to due process.

### PRAYER FOR RELIEF

WHEREFORE, Petitioner prays that this Court grant the following relief:

a. Assume jurisdiction over this matter;

b. Order that Petitioner be returned to the District of Minnesota;

c. Order the Respondents to show cause within 3 days of receiving this petition;

d. Declare that the actions of Respondents as set forth in the Petition and Motion violate the Fifth Amendment of the United States Constitution, 28 U.S.C. § 2241, the APA, and the INA;

e. Issue a writ of habeas corpus requiring that Respondents **immediately release** Petitioner;

f. Or provide Petitioner with a bond hearing in the District of Minnesota pursuant to 8 U.S.C. § 1226(a) within 7 days;

g. Enjoin Respondents from denying Petitioner's bond under U.S.C. § 1225(b)(2);

h. Should the Immigration Judge grant a bond, enjoin Respondents from invoking the auto-stay provision found at 8 C.F.R. § 1003.19(i)(2) during the pendency of any bond appeal; and

i. Grant any other and further relief that this Court deems just and proper.

DATED this 29 January 2026

/s/ Shana L. Drengenberg

Anderson & Anderson Law LLC
2900 Washington Ave. N

PETITION FOR WRIT OF HABEAS CORPUS -

Minneapolis, MN 55411
Attorney for Petitioner

PETITION FOR WRIT OF HABEAS CORPUS -